# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER D. SMITH, *et al.*, | ) | Case No. 1:20-cv-1848 |
| | ) | |
| Plaintiffs, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge Thomas M. Parker |
| | ) | |
| KRIS SWAFFER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## OPINION AND ORDER

Plaintiffs, ten individuals and entities, filed suit against Defendant Kris Swaffer, alleging violations of federal and State securities laws.  According to the complaint, Defendant told investors that they were getting in on the ground floor of a cannabis-related business with operations starting in Michigan, Texas, and the country of Macedonia.  Instead, Plaintiffs allege that Defendant defrauded them of about $2 million in the aggregate.  Defendant moves to dismiss the complaint for lack of personal jurisdiction, improper venue, and failure to state a claim.  For the reasons that follow, the Court **GRANTS IN PART AND DENIES IN PART** the motion.

## STATEMENT OF FACTS

Taking the facts alleged in the complaint as true and construing them in Plaintiffs' favor, as the Court must on the motion before it, Plaintiffs base their claims on the following facts.

Beginning in late 2016, Mr. Swaffer solicited investments in a venture involving cannabis-related products and operations in Michigan, Texas, and

Macedonia.  (ECF No. 1, ¶¶ 24 & 25, PageID #6.)  This venture, called 5 Letters, promised "millions of dollars in return on investment almost immediately," based on Mr. Swaffer's "substantial knowledge of the cannabis industry."  (*Id.*, ¶¶ 38(2), 38(3), PageID #8.)  Further, Mr. Swaffer represented that he could secure the licenses required in Macedonia, Michigan, and Texas and had, in fact, already purchased land in Texas and "secured his interest in obtaining a growers license" in Texas.  (*Id.*, ¶ 43, PageID #9; *see also id.*, ¶¶ 38(3), 42, PageID #8, 9.)  In a PowerPoint presentation, Mr. Swaffer touted first-year revenue for operations in Macedonia in excess of $1.2 billion and revenue from Texas of about $800 million.  (*Id.*, ¶¶ 39 & 40, PageID #8.)  Additionally, the slides provided specifics about the Texas facility, which would have indoor and outdoor growing operations on 100 acres consisting of 20,000 plants, growing to 64,000 plants within six months.  (*Id.*, ¶ 41, PageID #8–9.)

Although originally soliciting investments in 5 Letters, at some point Mr. Swaffer informed Plaintiffs that they were actually investors in a company called POHIH (Pure Organic Health International Holdings), Inc., which is incorporated in Texas.  (*Id.*, ¶¶ 21, 27, PageID #6.)  However, he referred to the venture interchangeably as 5 Letters or POHIH.  (*Id.*, ¶ 28.)  According to the complaint, Mr. Swaffer commingled his personal funds with those of investors, spent investors' money on personal expenses, employed family members at inflated salaries, lacked the skill and expertise to operate a cannabis business successfully, had no basis for his revenue projections, and otherwise failed to respect the corporate form.  (*See, e.g.*, *id.* ¶¶ 46(1)–(12), PageID #9–11.)

2

To investigate discrepancies between Mr. Swaffer's ongoing positive reports and assurances and disappointing financial results, Plaintiffs requested access to books and records both informally and under Texas law.  (*Id.*, ¶¶ 111 & 112, PageID #25–26.)  When POHIH eventually responded to that request, it failed to provide various financial and accounting information.  (*Id.*, ¶¶ 113–18, PageID #26.)  Based on the information provided, only about $6 million of the approximately $15 million raised is accounted for.  (*Id.*, ¶ 118.)  Collectively, Plaintiffs invested over $2 million with Mr. Swaffer.  (*Id.*, PageID #1.)

## STATEMENT OF THE CASE

Plaintiffs assert ten claims, naming Mr. Swaffer as the sole defendant.  (*Id.*, ¶ 15, PageID #5.)  Plaintiffs allege fraud in violation of the Securities and Exchange Act of 1934 and Rule 10b-5 (Count I), fraud and the sale of unregistered securities in violation of the Securities Act of 1933 (Counts II & III), Blue-Sky claims under the Ohio Securities Act (Count IV), the Indiana Uniform Securities Act (Count V), and the California Corporations Code (Count VI), as well as statutory claims under Michigan law (Count VII) and State-law claims for fraud (Count VIII) and constructive trust (Count IX).  (*See generally id.*, ¶¶ 119–66, PageID #27–34.)

Under Rule 12(b)(3), Defendant moves to transfer this case to:  (1) the Southern District of Texas under 28 U.S.C. § 1404(a), pursuant to a contractual forum-selection clause; or (2) alternatively, the Eastern District of Michigan or the Southern District of Texas under 28 U.S.C. § 1406.  Defendant also moves to dismiss the various State-law claims (Counts IV through IX) for lack of personal jurisdiction under Rule 12(b)(2).  (ECF No. 18, PageID #296.)  To address factual disputes relating to

personal jurisdiction, the Court held an evidentiary hearing on September 8, 2021. Finally, Defendant moves to dismiss Counts I, II, III, IV, V, VI, and VII based on the applicable statutes of limitations and for failure to state a claim under Rule 12(b)(6). (*Id.*)

## ANALYSIS

## I.     Transfer or, Alternatively, Improper Venue

Pursuant to a forum-selection clause, Defendant seeks to transfer this case under 28 U.S.C. § 1404(a) to the Southern District of Texas.  Alternatively, Defendant moves to dismiss Plaintiffs' State law claims under Rule 12(b)(3) or to transfer the case to the Eastern District of Michigan or the Southern District of Texas under 28 U.S.C. § 1406.

### I.A.     Transfer Under 28 U.S.C. § 1404(a)

Section 1404 of Title 28 allows for a change in venue.  Subsection (a) provides: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a).  When "ruling on a motion to transfer," a district court should consider "the private interests of the parties, including their convenience and the convenience of potential witnesses, public-interest concerns, as well as whether the transfer is in the interests of justice." *Boling v. Prospect Funding Holdings, LLC*, 771 F. App'x 562, 567 (6th Cir. 2019) (citing *Moses v. Business Card Express, Inc.*, 989 F.2d 1131, 1137 (6th Cir. 1991)).

### I.A.1. The Forum-Selection Clause

In considering these interests, a forum-selection clause in an agreement between the parties weighs heavily. "When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause." *Atlantic Marine Const. Co, Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). "Only under extraordinary circumstances *unrelated to the convenience of the parties*" should transfer not occur. *Id.* But this "analysis [only] comes into play once a court has determined that there is an enforceable forum-selection clause" in the first place. *VSAT Sys., LLC v. Intelsat US LLC*, No. 5:20-cv-41, 2020 WL 435459, at *2 (N.D. Ohio Jan. 28, 2020) (citing *North v. McNamara*, 47 F. Supp. 3d 635, 646–48 (S.D. Ohio 2014)). Under the law of this Circuit, courts should enforce a forum-selection clause "absent a strong showing that it should be set aside." *Id.* (quoting *Wong v. PartyGaming, Ltd.*, 589 F.3d 821, 828 (6th Cir. 2009)).

### I.A.1.a. The POHIH Stockholders Agreement

On a motion to transfer, the Court may consider affidavits, stipulations, or other relevant documents. *Midwest Precision Servs., Inc. v. PTM Indus. Corp.*, 574 F. Supp. 657, 659 (N.D. Ill. 1983) (citing *Kisko v. Penn Cent. Transp. Co.*, 408 F. Supp. 984, 986 (M.D. Pa. 1976)); *cf. Gavitt v. Born*, 835 F.3d 623, 640 (6th Cir. 2016) (noting that, on a motion under Rule 12(b)(6), a court "may consider exhibits attached to the complaint, public records, items appearing in the record of the case, and exhibits attached to defendant's motion to dismiss, so long as they are referred to in the complaint and are central to the claims contained therein"). Though the complaint

does not attach the POHIH Stockholders Agreement, Defendant attached it to his motion.  (ECF No. 18-3.)  That document is central to the dispute between the parties; therefore, the Court considers it in connection with Defendant's motion to transfer.

The Stockholders Agreement of POHIH contains a forum-selection clause providing for the resolution of disputes in Texas:

> **Section 9.12  Dispute Resolution.**  Subject to Section 9.13, any dispute, controversy or claim arising out of, relating to, or in connection with, this Agreement or any breach, termination or validity thereof (a "**Dispute**") shall be settled by a court of competent jurisdiction in Harris County, Texas.

(ECF No. 18-3, PageID #349.)  Further, the Agreement provides that Texas law governs its interpretation.  (*Id.*, § 9.11.)  The POHIH Stockholders Agreement has provisions governing the company's purchase of shares upon the death of a stockholder, stock buybacks, disposition of shares on a stockholder's divorce, and certain third-party stock sales.  (*See generally id.*, PageID #336–44.)  But the Agreement contains no provision relating to the sale and purchase of stock in the first instance.

### I.A.1.b. Enforceability of the Forum-Selection Clause

Before giving effect to a forum-selection clause, the Court must determine whether it is enforceable.  *North*, 47 F. Supp. 3d at 647.  Federal law governs this inquiry.  *Id.* at 639.  "The party opposing the forum selection clause bears the burden of showing that the clause should not be enforced."  *Id.* (quoting *Wong*, 589 F.3d at 828).  Three circumstances warrant setting aside a forum selection clause, where: (1) the clause was obtained by fraud, duress, or other unconscionable means; (2) the designated forum would ineffectively or unfairly handle the suit; or (3) the designated

forum would be "so seriously inconvenient such that requiring the plaintiff to bring suit there would be unjust." *Id.* at 639–40 (cleaned up).

Plaintiffs make two arguments that the forum-selection clause is not enforceable. First, contrary to Defendant's argument, Plaintiffs maintain that the forum-selection clause was obtained by fraud. On the face of the complaint, Plaintiffs' allegations raise the question whether Defendant fraudulently induced their investments at all or in POHIH specifically. (*See, e.g.*, ECF No. 1, ¶¶ 26–28, PageID #6; *see also* ECF No. 19, PageID #380.) But Defendant presents evidence that all but two Plaintiffs (Areti Ventures and BWO) signed agreements joining the POHIH Stockholders Agreement. (ECF No. 18-4.) On the face of this record, which the Court properly considers on a motion to transfer, *see Midwest Precision Servs.*, 574 F. Supp. at 659, none of the three circumstances that warrant setting aside an otherwise valid forum-selection clause apply to Plaintiffs other than, arguably, Areti Ventures and BWO. Generalized fraud does not suffice. *See Wong*, 589 F.3d at 828.

Second, Plaintiffs argue that Defendant cannot enforce the agreement because he is not a party to it. Plaintiffs rely on language in the POHIH Stockholders Agreement disclaiming third-party beneficiaries. Section 9.09 of the Agreement provides:

> **Section 9.09  No Third-party Beneficiaries.** This Agreement is for the sole benefit of the parties hereto and their permitted assigns and nothing herein, express or implied, is intended to or shall confer upon any other Person or entity any legal or equitable right, benefit or remedy of any nature whatsoever under or by reason of this Agreement.

(ECF No. 18-3, PageID #349.)  Parties to the Agreement include Plaintiffs (except for Areti Ventures and BWO) and POHIH, not Mr. Swaffer.  (*Id.*, PageID #328.)

Notwithstanding the third-party beneficiary language, Defendant points to *Highway Commercial Services, Inc. v. Zitis*, No. 2:07-cv-1252, 2008 WL 1809117, at *4 (S.D. Ohio Apr. 21, 2008), for the proposition that as an "officer and owner of POHIH," he can "invoke the forum selection clause."  (ECF No. 20, PageID #447.) There, the court noted several exceptions to the general rule that "a contractual agreement is unenforceable against a person or entity who was not a party to the contract."  *Id.*  One such circumstance occurs where a "party is so closely related to the dispute that it is foreseeable that the party will be bound."  *Id.*  "For example, shareholders, officers, and directors of a corporation may be bound by a forum selection clause in a corporate contract."  *Id.* (citations omitted).  Where it is "reasonably foreseeable" that a defendant "would seek to enforce the [forum-selection] clause," it will be enforced.  *Holtzman v. Village Green Mgmt. Co.*, No. 2:19-cv-11150, 2020 WL 264331, at *6 (E.D. Mich. Jan. 17, 2020).

Here, it is reasonably foreseeable that Mr. Swaffer, one of the only people related to and an officer of POHIH with whom Plaintiffs had dealings, would seek to enforce the forum-selection clause.  *See Linz v. Core Values Roadside Serv. LLC*, No. 1:19-cv-529, 2020 WL 1291639, at *3 (S.D. Ohio Mar. 18, 2020) (noting a non-signatory can still enforce contract provisions if there is a "sufficiently close relationship" between those named by the agreement and those not named, including when "the non-signatory is in an agency relationship with one of the parties to the

8

contract," among other "common situations"); *Hasler Aviation, L.L.C. v. Aircenter, Inc.*, No. 1:06-cv-180, 2007 WL 2463283, at *6 (E.D. Tenn. Aug. 27, 2007) (finding a non-signatory "particularly foreseeable" because he and the company were "nearly alter egos"). Accordingly, the Court finds that Mr. Swaffer can enforce the forum-selection clause notwithstanding its third-party beneficiary language.

### I.A.1.c. Scope of the Forum-Selection Clause

"Determining whether the forum-selection clause governs this suit" presents a separate issue "of contract interpretation." *Holtzman*, 2020 WL 264331, at *10 (citing 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3803.1). Questions of interpretation are "analytically distinct" from those related to enforceability. *Id.* (citations and quotation omitted). To interpret the clause, the Court uses "ordinary contract principles." *Id.* (citing *in re Delta America Re Ins. Co.*, 900 F.2d 890, 892 (6th Cir. 1990)).

Here, the forum-selection clause in Section 9.12 of the POHIH Stockholders Agreement covers "any dispute, controversy or claim arising out of, relating to, or in connection with, this Agreement." (ECF No. 18-3, PageID #349.) In one sense, this language sweeps broadly. The phrase "any dispute, controversy or claim" means what it says. At the same time, however, the clause has a limited reach. It more narrowly applies only to litigation "arising out of, relating to, or in connection with" the Agreement itself. Plaintiffs point out, correctly, that they are not suing on the Agreement. (ECF No. 19, PageID #381.) They bring no claim related, broadly, to the Agreement. Instead, Plaintiffs allege violation of the federal securities laws and related State Blue-Sky laws and additional common-law claims. Nor do Plaintiffs

bring claims relating to the breach, termination, or validity of the POHIH Stockholders Agreement, which also fall within the forum-selection clause. (ECF No. 18-3, PageID #349.)

Defendant argues that the clause applies because it encompasses Plaintiffs' securities and tort claims because they "relate to the subject matter of the contract" and the parties' relationship. (ECF No. 20, PageID #448.) This argument depends on adding words to the POHIH Stockholders Agreement that are not there. But the Agreement does not extend as far as the claims Plaintiffs bring.

Defendant relies on two cases to support transfer based on the language of the forum-selection clause. First, he points to *Buckeye Polymers, Inc. v. Bunting Magnetics Co.*, No. 4:19-cv-1256, 2019 WL 4451351, at *2–4 (N.D. Ohio Sept. 16, 2019). But *Buckeye Polymers* involved a quasi-contractual claim and negligent misrepresentation—claims that ultimately "derived from [the parties'] contractual agreement," "though cloaked as non-contractual causes of action." *Id.* at *3. It did not involve securities claims. Second, Defendant argues, based on *Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227 (6th Cir. 1995), that a forum-selection clause governs securities claims where the securities formed the basis of the contract containing the clause. (ECF No. 20, PageID #445.) But *Shell* says nothing of the sort. There, the Sixth Circuit enforced forum-selection and choice of law provisions where the plaintiffs attempted to rescind the contracts at issue and be restored to their pre-investment position under a State statute. *Id.* at 1228–29. Although the decision is

not clear on the matter, the securities fraud at issue in *Shell* appears to have occurred contemporaneously with the parties' agreements. *Id.*

In contrast, Plaintiffs claim fraud relating to investments that largely occurred before June 2018 (*see, e.g.*, ECF No. 1, ¶¶ 37, 47, 52, 56, 61, 65–67, 70, 75, 104, PageID #8, 11–12, 15–18, 22)—when Plaintiffs signed the joinder agreements (ECF No. 18-4). Accordingly, *Shell* has limited persuasive value. To be sure, a "contractually-based forum selection clause will encompass tort claims if the tort claims 'ultimately depend on the existence of a contractual relationship' between the parties." *Rickettes v. Hybris AG*, No. 1:15 CV 277, 2015 WL 13679481, at *3 (N.D. Ohio June 19, 2015). But Plaintiffs' claims turn on fraud that allegedly occurred before formal contractual arrangements. Indeed, according to the complaint and the documents Defendant provides with its motion, Plaintiffs did not make their investments contingent on joinder in the Stockholders Agreement. The parties do not point to authorities more directly analogous, and the Court has not located any either. But based on the language of the forum-selection clause at issue, which does not reach as far as Defendant would like, the Court is hard-pressed to conclude that the forum-selection clause of the POHIH Stockholders Agreement applies.

### I.A.2. Considerations Regarding Transfer

Because the forum-selection clause does not apply, the Court gives it no weight or consideration in evaluating transfer under Section 1404(a). The Court instead considers whether the factors under Section 1404(a) weigh in favor of transfer, remembering that, "if a change of venue serves merely to shift the inconvenience from one party to another, a change of venue is generally not warranted." *Hanlon v.*

*Takeda Pharm. N. Am., Inc.*, No. 10-02713, 2011 U.S. Dist. LEXIS 42122, at *4 (N.D. Ohio Apr. 14, 2011) (citations omitted).  The party requesting transfer "bears the burden of proof to show the factors weigh 'strongly' in favor of transfer."  *Picker Int'l, Inc., v. Travelers Indem. Co.*, 35 F. Supp. 2d 570, 573 (N.D. Ohio 1998).

Defendant does not carry his burden for at least two reasons.  First, the parties' private interests—namely, convenience to the parties and potential witnesses and the parties' interests in securing relevant documentary evidence—do not warrant transfer.  Though the parties are scattered throughout five States, the Court gives significant weight to the fact that seven of the ten Plaintiffs are Ohio residents, and all ten Plaintiffs chose to sue in Ohio.  *See Carney McNicholas, Inc. v. Ecologic Indus., LLC*, No. 13-2529, 2014 U.S. Dist. LEXIS 85748, at *5 (N.D. Ohio June 23, 2014) (citing *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 413 (6th Cir. 1998)) (giving a plaintiff's choice of forum "great weight").  Further, based on the information presently before the Court, the parties comprise the majority of the potential material witnesses, which, for the same reason as above, weighs against transfer.  Regarding the documentary evidence, the Court finds that most of the relevant documentary evidence—emails, bank records, and company documents—is either readily available or otherwise electronically accessible.

Second, the public's interest and the interests of justice do not warrant transfer to Texas.  Most of the lawsuit's operative facts occurred in Ohio.  *See Mancina v. McDermott*, No. 21-00333, 2021 U.S. Dist. LEXIS 59048, at *17 (N.D. Ohio Mar. 29, 2021) (transferring the case to the place where the "operative facts occurred").  Of

12

those various claims Plaintiffs assert, no claim relies on Texas law.  Resolving these claims in Ohio, where the parties brought both their federal and State claims, including a claim under Ohio law, serves the public's interest in judicial economy. *See Reynolds v. Merck Sharp & Dohme Corp.*, No. 15-397, 2016 U.S. Dist. LEXIS 72120, at *10 (N.D. Ohio June 2, 2016).  For these reasons, the Court finds that the Section 1404(a) factors do not strongly favor transfer to the Southern District of Texas.

### I.B.   Improper Venue

Defendant also moves to dismiss Plaintiffs' State law claims under Rule 12(b)(3) for improper venue.  "On a motion to dismiss for improper venue, the plaintiff bears the burden of proving that venue is proper."  *Audi AG & Volkswagen of Am., Inc. v. Izumi*, 204 F. Supp. 2d 1014, 1017 (E.D. Mich. 2002).  To resolve such a motion, a district court "may examine facts outside the complaint," but still must "draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff." *Id.*  If the movant prevails, the court has discretion to decide whether it should dismiss the action or transfer it to an appropriate court.  *Id.*  "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."  28 U.S.C. § 1406(a).  Defendant seeks transfer to the Eastern District of Michigan or the Southern District of Texas.

Unlike Section 1404(a), Section 1406 and Rule 12(b)(3) "authorize dismissal *only* when venue is 'wrong' or 'improper' in the forum in which it was brought." *Atlantic Marine*, 571 U.S. at 55 (emphasis added).  For this reason, the Court begins

by considering whether this District presents an improper forum.  Venue can be proper in multiple places.  Section 1391(b) provides at least three:  a district where "any defendant resides," a district "in which a substantial portion of the events or omissions giving rise to the claim occurred," or if neither of those first two venues are available, "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action."  28 U.S.C. § 1391(b)(1)–(3).  Only when none of these three are satisfied is dismissal or transfer  proper.  *Atlantic Marine*, 571 U.S. at 56.

Mr. Swaffer is the only Defendant, resides in Michigan, and is not an Ohio resident; therefore, this District is not where "any defendant resides."  Accordingly, Section 1391(b)(1) does not make the Northern District of Ohio a proper venue.

Under Section 1391(b)(2), venue lies where "a substantial part of the events or omissions giving rise to the claim occurred[.]"  28 U.S.C. § 1391(b)(2).  The statutory venue provisions in both the Securities Act and Exchange Act largely track Section 1391.  Under the Securities Act, a plaintiff may file suit "in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale took place, if the defendant participated therein." 15 U.S.C. § 77v(a).  And under the Exchange Act, a plaintiff may bring suit in any district where a violation of the Act occurred "or in the district wherein the defendant is found or is an inhabitant or transacts business."  15 U.S.C. § 78aa(a).  The Court considers these three statutes together, noting that a proper venue need not be the best venue, just one where a substantial part of the events at issue occurred, even if

14

another venue has a stronger connection to the lawsuit. *See First of Mich. Corp. v. Bramlet*, 141 F.3d 260, 263 (6th Cir. 1998).

"Regardless of who bears the burden of proof, under Rule 12(b)(3), a plaintiff's well-pled allegations pertaining to the venue issue are taken as true, unless contradicted by a defendant's affidavits." *Reilly v. Meffe*, 6 F. Supp. 3d 760, 765 (S.D. Ohio 2014) (citing 5B Charles A. Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1352 (3d ed. 2013)). Plaintiffs argue that the events that led to their claims—the solicitation, offer, sale of POHIH shares, and subsequent transfer of funds—occurred in or originated from this District. (*See generally* ECF No. 1.) Defendant supplies a declaration in which Mr. Swaffer swears that he, "individually, do[es] not conduct any business in Ohio. . . . Also the majority of the communications [with Plaintiffs] would occur . . . while I was in Michigan." (ECF No. 18-2, ¶ 4, PageID #326.)

Plaintiffs offer competing declarations. For example, Mr. Smith says he met with Mr. Swaffer in Avon, Ohio, reviewed a PowerPoint slide deck Mr. Swaffer sent him while in Ohio, and wired Mr. Swaffer money from an Ohio bank account. (ECF No. 19-1, ¶¶ 4–6 PageID #393.) Ms. Conrad swears she met with Mr. Swaffer at a restaurant in Avon, Ohio, where he solicited her investment in POHIH; she, too, transferred money from her Ohio account. (ECF No. 19-2, ¶¶ 4–6 PageID #420.) These competing facts, which the Court construes in Plaintiffs' favor, indicate there are substantial, as opposed to tangential, connections between Plaintiffs' claims and this District, which establish it as a proper venue under Section 1391(b)(2).

15

Finally, venue must be proper as to each claim, but "the principle of pendent or ancillary venue" permits a claim "not properly venued" to be heard "as long as another properly venued claim arising out of a common nucleus of operative facts is also brought at the same time in the same district." *Reilly*, 6 F. Supp. 3d at 765 (cleaned up). Because this District is a proper venue for Plaintiffs' federal securities claims, this forum is proper for the remaining claims too. As pleaded, this dispute arises from a common set of operative facts giving rise to the various claims Plaintiffs bring. Therefore, the Court need not dismiss or transfer the State-law claims or Plaintiffs' lawsuit.

## II. Personal Jurisdiction

Defendant argues that the Court does not have personal jurisdiction over him regarding Plaintiffs' State-law claims asserted in Counts IV through VIII (ECF No. 18-1, PageID #305–10), though the Court analyzes this defense as if Defendant asserts it against all of Plaintiffs' claims. Under Rule 12(b)(2), a defendant can move to dismiss an action for lack of personal jurisdiction. Without question, the Court has subject matter jurisdiction over Plaintiffs' claims arising under the Exchange Act, *see* 15 U.S.C. § 78aa(a) (exclusive federal jurisdiction), and the Securities Act, *see* 15 U.S.C. § 77v(a) (concurrent jurisdiction). Even then, the Court still must determine if it has specific personal jurisdiction. *See* Fed. R. Civ. P. 4(k)(1)(C).

No matter if "jurisdiction arises under 28 U.S.C. §§ 1331 or 1332, Plaintiff[s] must satisfy the forum state's requirements for personal jurisdiction." *Georgalis v. Facebook, Inc.*, 324 F. Supp. 3d 955, 958 (N.D. Ohio 2018). Where, as here, a defendant files a properly supported motion to dismiss for lack of personal

16

jurisdiction, "a plaintiff must prove that jurisdiction is proper over each defendant individually." *Zobel v. Contech Enters.*, 170 F. Supp. 3d 1041, 1044 (S.D. Ohio 2016) (quoting *SFS Check, LLC v. First Bank of Del.*, 744 F.3d 351, 354–56 (6th Cir. 2014)). The district court may "decide the motion on the materials submitted, permit discovery in order to aid in deciding the motion, and/or conduct an evidentiary hearing." *Georgalis*, 324 F. Supp. 3d at 958 (citing *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)).

## II.A.  Findings of Fact Relating to Personal Jurisdiction

To help resolve Defendant's motion to dismiss for lack of personal jurisdiction, the Court conducted an evidentiary hearing.  In doing so, the Court asked to hear testimony from (1) Plaintiff Christopher Smith, (2) Plaintiff Jeffrey Thomas, and (3) Defendant Kris Swaffer.  (*See* Minute Order, July 21, 2021.)  Based on the declarations each of these individuals submitted in connection with the motion, the Court determined that these individuals spanned the factual range of the parties' respective arguments regarding personal jurisdiction.  That is, Mr. Smith likely presented Plaintiffs' strongest case for personal jurisdiction because he swore that Mr. Swaffer solicited his investment in person in Ohio on at least two occasions.  (ECF No. 19-1, PageID #393–94.)  At the other end of the spectrum, Mr. Thomas only identified in-person conversations with a representative of Mr. Swaffer and investments made from a bank in Ohio.  (ECF No. 19-5, PageID #428.)  For his part, Mr. Swaffer declared that he "do[es] not conduct any business in Ohio" and that he "did not represent, offer, or sell any investment in POHIH to Plaintiffs."  (ECF No. 18-2, PageID #326.)  Additionally, the Court provided the parties with the

17

opportunity to call other witnesses.  (*See* Minute Order, July 21, 2021.)  Based on the evidence before the Court at the hearing, the Court makes the following findings of fact for purposes of resolving Defendant's motion.

### II.A.1. Mr. Swaffer's Agent in Ohio

Plaintiff Jeffrey Thomas owns three trucking companies.  His vice president was Sean Williams, with whom Mr. Thomas also owns a couple of other businesses..  In the fall of 2016, Williams brought an opportunity to invest in 5 Letters to Mr. Thomas, who understood that Williams would invest in the venture along with him.  In December 2016, Mr. Thomas made two separate wire transfers to Mr. Swaffer totaling $250,000 using information Williams provided.  Williams also provided Mr. Thomas with paperwork related to the investment.  Mr. Thomas thought that Williams was investing the same amount in 5 Letters at that time and had no other relationship with the venture.

In early March 2017, Williams left his employment with Mr. Thomas, who did not know where Williams was going to work next.  Shortly after that, Williams went to work for Mr. Swaffer.  Emails Williams sent on behalf of the company identify him as the president and chief operating officer of 5 Letters.  Later, Mr. Thomas had a forensic review of his companies' server conducted.  That review showed that Williams began soliciting investments and performing other work for 5 Letters as early as October 2016.  These communications show that Williams had extensive involvement in Mr. Swaffer's cannabis venture, including participating in meetings in Michigan and meeting with counsel in Texas to secure the necessary license and regulatory approvals for operations there.  They also show that Williams served as

an agent for Mr. Swaffer, who directed solicitations to Ohio. Indeed, the record shows that, when Williams facilitated Mr. Thomas's investment in 5 Letters, he was working for Mr. Swaffer. The parties do not dispute that, at all relevant times, Williams lived in Northeast Ohio, and Mr. Swaffer admitted that Williams acted on his behalf in Ohio.

### II.A.2. Mr. Swaffer's Solicitations in Ohio

Plaintiff Christopher Smith, a retired insurance broker, lives in Avon, Ohio. He met Mr. Swaffer socially in 2015 through a mutual friend, and the two men met on occasion in Michigan to golf and socialize. On one of those trips in 2016, Mr. Smith toured a cannabis operation Mr. Swaffer had in Michigan. Later that year, in December 2016, Mr. Smith and Mr. Swaffer met for dinner in Avon, Ohio. When Mr. Smith arrived for the dinner, Mr. Swaffer was wrapping up a meeting that involved Williams and others relating to investing in the cannabis venture. Mr. Smith asked about the venture, and the next morning the two men met in Avon to discuss it. Mr. Swaffer made his pitch for Mr. Smith to invest in 5 Letters, which he did after talking with several others in Ohio who invested either directly or through entities, including those who are now Plaintiffs. In early January 2017, Mr. Smith invested $200,000.

In April 2018, Williams, working for Mr. Swaffer, sent an email to investors that Mr. Swaffer would be in Avon to hold a meeting to provide updates about the venture. In addition to providing updates about various aspects of the venture, at the meeting Mr. Swaffer was physically present and sought additional investments. Mr. Thomas met Mr. Swaffer for the first time at this meeting. Mr. Smith attended,

as did a number of investors, including some who are now Plaintiffs.  As a result of this meeting, Mr. Smith made a second investment of $200,000.

In addition, Mr. Smith had discussions about the venture in person in Ohio when Mr. Swaffer made various trips for fishing tournaments in 2017 and 2018.  On at least one other occasion, Mr. Smith introduced Mr. Swaffer to another investor in Ohio when the men met for drinks.  Additionally, in his brief testimony, Mr. Swaffer testified that he met another investor, one of the Plaintiffs, at a casino in Toledo where he solicited his investment at issue in this litigation.  Williams arranged that meeting too.

By the Court's count, the evidence at the hearing establishes that Mr. Swaffer met in Ohio with most, if not all, of the people who are Plaintiffs (either individually or through entities) in this case, plus others.  The declarations of several Plaintiffs are consistent with the testimony of Mr. Smith and Mr. Thomas (*see* ECF No. 19-2; ECF No. 19-4; ECF No. 19-6), establishing that Mr. Swaffer personally solicited their investments in Ohio.  The record shows that two Plaintiffs—Areti Ventures and BWO—may not have personally done business with Mr. Swaffer in Ohio, though the former wired him funds from a bank in Ohio.

Although the Court advised the parties that Mr. Swaffer's testimony was necessary to resolve disputes of fact relating to personal jurisdiction, Defendant rested without conducting a direct examination of Mr. Swaffer.  The Court finds that the testimony of Mr. Smith and Mr. Thomas was consistent and credible.  Further,

20

based on the evidence, testimony, and demeanor of the witnesses, the Court finds that Mr. Swaffer's declaration is not credible.

### II.B. Specific Jurisdiction

Because the Court exercised its discretion to resolve the factual disputes between the parties as they relate to personal jurisdiction through an evidentiary hearing, Plaintiffs must establish by a preponderance of the evidence that the Court has personal jurisdiction over Mr. Swaffer. *See, e.g.*, *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (citing *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980)). A federal court may exercise personal jurisdiction over a defendant who is "amenable to service of process under the forum state's long-arm statute." *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) (cleaned up); *see also Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir. 1996) (citations omitted). Additionally, "a valid assertion of personal jurisdiction" must comport with "constitutional due process." *Nationwide Mut. Ins.*, 91 F.3d at 793 (citation omitted); *Bird*, 289 F.3d at 871.

Jurisdiction is determined as of the commencement of the action. *See, e.g.*, *Mollan v. Torrance*, 22 U.S. (Wheat.) 537, 539–40 (1824) ("[T]he jurisdiction of the Court depends upon the state of things at the time of the action brought."). Plaintiffs commenced this action in August 2020 (ECF No. 1) and obtained service of process by September 9, 2020 (ECF No. 7). In April 2021, the Ohio General Assembly extended the State's long-arm statute to the limits of the Constitution. *See* Ohio Rev. Code § 2307.382(C) ("[A] court may exercise personal jurisdiction over a person on any basis consistent with . . . the United States Constitution."). Because that

21

amendment does not apply, the Court first examines Ohio's long-arm statute before turning to personal jurisdiction under the Constitution. *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006)

### II.B.1. Ohio's Long-Arm Statute

Ohio's long-arm statute confers specific personal jurisdiction over a defendant who engages in any of nine acts that occur "in this state." Ohio Rev. Code § 2307.382(A)(1)–(9). Of relevance here, the statute confers jurisdiction where a person "[t]ransact[s] any business in this state"; "[c]aus[es] tortious injury by an act or omission in this state"; or causes tortious injury in Ohio by an act or omission outside the State under various circumstances that Plaintiffs' allegations implicate. *Id.* § 2307.382(A)(1) & (3); *see also id.* § 2307.382(A)(4), (6) & (7).

Plaintiffs generally maintain Mr. Swaffer transacted business in Ohio, which satisfies the State long-arm statute. (ECF No. 19, PageID #376–77.) "The Ohio Supreme Court has noted that the word 'transact' means 'to carry on business,' and 'to have dealings,' and it is broader than the word 'contract.'" *Attorney Gen. v. Grand Tobacco*, 171 Ohio App. 3d 551, 2007-Ohio-418, 871 N.E.2d 1255, ¶ 18 (Ohio Ct. App.) (quoting *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St. 3d 73, 75, 559 N.E.2d 477 (Ohio 1990)). Because this jurisdictional grant sweeps broadly, the "highly particularized fact situations" to which the statute applies "render[s] any generalization unwarranted." *United States Sprint Commc'ns Co. v. K's Foods*, 68 Ohio St.3d 181, 185, 1994-Ohio-504, 624 N.E.2d 1048 (Ohio 1994) (quotation omitted). At bottom, "the plaintiff must also demonstrate that there is a substantial connection

between the defendant and the forum state." *Shaker Constr. Grp., LLC v. Schilling*, No. 1:08-cv-278, 2008 WL 4346777, at *3 (S.D. Ohio Sept. 18, 2008).

On the record developed at the evidentiary hearing, there is no question that Mr. Swaffer transacted business in Ohio within the meaning of the long-arm statute. He employed Williams in the State to solicit investors, both Ohio residents and others, and he conducted meetings in Ohio for the specific purpose of soliciting investments and updating investors.  In fact, the evidence shows that Mr. Swaffer's relationship with Williams was sufficiently extensive that it makes Williams an agent of Mr. Swaffer, *see* Ohio Rev. Code § 1337.22 ("'Agent' means a person granted authority to act for a principal."), and a sales representative within the meaning of the long-arm statute, *see* Ohio Rev. Code § 2307.382(B).

### II.B.2. Due Process

Under the law of this Circuit, specific personal jurisdiction comports with due process under the Constitution where:  (1) the defendant purposefully avails himself of the privilege of acting or causing a consequence in the forum State; (2) the cause of action arises from the defendant's activities there, and (3) the defendant's acts or the consequences of those acts have a substantial enough connection with the forum to make the exercise of jurisdiction over the defendant reasonable.  *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1299 (6th Cir. 1989).  Maintenance of the suit as a result of defendant's contacts with the forum State must also not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Wash.*, 326 U.S. 310, 316 (1945).

Based on the evidence at the hearing, Mr. Swaffer purposefully availed himself of doing business in Ohio.  On several occasions, he entered the State and solicited investments in 5 Letters, POHIH, or both.  In addition, he provided updates to investors, and he employed Williams to act on his behalf in the State and elsewhere.  These contacts are sufficiently strong and continuous that Mr. Swaffer, or a reasonable person in his position, should expect to be hailed into court in Ohio in connection with the activity he conducted in the State.  *See, e.g.*, *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d 499, 505–06 (6th Cir. 2014).  Moreover, Plaintiffs' claims without question arise from Mr. Swaffer's activities in Ohio.  Mr. Swaffer has "a sufficiently substantial connection to the forum such that the exercise of jurisdiction is not unreasonable."  *Schneider v. Hardesty*, 669 F.3d 693, 703 (6th Cir. 2012).  Indeed, Mr. Swaffer made multiple trips to Ohio, solicited investments in the State in person, provided updates to investors (also in person), and employed an agent and representative here.

Finally, "[i]n determining whether the exercise of jurisdiction is reasonable, the court should consider, among others, the following factors:  (1) the burden on the defendant; (2) the interest of the forum;" and "(3) the plaintiff's interest in obtaining relief[.]"  *Id.* at 703–04.  These considerations also demonstrate that Mr. Swaffer has a sufficient nexus with the forum.  The interest of the forum in adjudicating allegations of fraud arising from the investments solicited within its borders more than offsets whatever marginal burden Mr. Swaffer will incur by litigating in Ohio, as opposed to the Eastern District of Michigan or the Southern District of Texas.  The

exercise of personal jurisdiction over Mr. Swaffer is not unreasonable and is consistent with traditional notions of fair play and substantial justice.

### II.C. Pendent Personal Jurisdiction

A final matter on the evidence from the hearing merits a brief mention. As note above, the record leaves a question whether Mr. Swaffer or Williams interacted with Areti Ventures and BWO in or from within Ohio. Mr. Swaffer had the opportunity to testify on the subject—and the Court requested that he do so—but Defendant presented no such evidence. On this record, the Court finds that Williams directed contact to each Plaintiff from within Ohio, making the Court's exercise of personal jurisdiction over Mr. Swaffer fall within the four corners of Ohio's long-arm statute.

Moreover, to the extent any question remains about personal jurisdiction over Mr. Swaffer regarding the State-law claims of Areti Ventures and BWO, or any other Plaintiffs for that matter, those claims arise from the same nucleus of operative fact as the federal claims, such that (1) they form part of the same case and controversy under Article III and 28 U.S.C. § 1367, and (2) there is no substantive or procedural unfairness to Mr. Swaffer from defending against those claims here. *See* 4A Wright & Miller, *Federal Practice and Procedure* § 1069.7, at 345 (2015). In such circumstances, "it makes little sense to dismiss or transfer claims because doing so would not relieve the defendant from the obligation to appear and defend against other related claims, and would create inefficiencies by forcing claims . . . to be tried in different jurisdictions." *Capitol Specialty Ins. Corp. v. Splash Dogs, LLC*, 801 F. Supp. 2d 657, 667 (S.D. Ohio 2011).

## III.    Motion to Dismiss for Failure to State a Claim

Defendant argues that Plaintiffs' complaint fails to state a claim on which relief can be granted.  (ECF No. 18-1, PageID #315–22.)  Also, Defendant maintains that the applicable statutes of limitation and repose bar at least some of Plaintiffs' claims.

### III.A. Statutes of Limitation and Statutes of Repose

A statute of limitations restricts the time a plaintiff has to file a complaint after discovering an injury, violation, or claim.  Statutes of repose limit the time that a plaintiff has to file their complaint after a specific event or action occurs—such as a stock sale—regardless of whether the plaintiff's injury has accrued.  At the pleading stage, "the burden of demonstrating compliance with the statutes of limitation [or repose] is on the plaintiff." *Burns v. Waterhouse*, No. 1:90-CV-2288, 1993 U.S. Dist. LEXIS 21471, at *16 (N.D. Ohio Feb. 16, 1993) (citation omitted).

### III.A.1. Securities Act Claims

Plaintiffs allege that Defendant violated Sections 5 and 12 of the Securities Act (Counts II and III).  (ECF No. 1.)  Specifically, Plaintiffs allege that Defendant: (1) sold unregistered securities in violation of 15 U.S.C. §§ 77e and 77l(a)(1); and (2) sold securities by means of communication that include an untrue statement or omission of fact in violation of 15 U.S.C. § 77l(a)(2).  (*Id.*)  A different limitations period and statute of repose applies to each claim.  Section 77e has a one-year statute of repose.  15 U.S.C. § 77m.  The last stock sale occurred in March 2019 (ECF. No. 1, ¶ 84, PageID #20), more than one year before Plaintiffs filed suit in August 2020 (ECF No. 1); therefore, Plaintiffs' claims under Section 77e are time-barred.

As for Plaintiffs' Section 77l(a)(2) claims—that Defendant misrepresented or omitted facts when he sold stock—Plaintiffs must have filed their complaint within one year of discovering the untrue statement or omission *and* within three years of each sale.  *See* 15 U.S.C. § 77m.  Here, Plaintiffs allege that they did not discover Defendant's misrepresentations until March 13, 2020, at the earliest, when Mr. Smith "made a statutory request for books and records" under Texas law.  (ECF No. 1, ¶ 112, PageID #26.)  After hearing nothing for three months, on June 26, 2020, POHIH produced "a handful of records," but that production did not contain financial statements or the like.  (*Id.*, ¶ 113.)  Plaintiffs argue that, throughout the investment period, Defendant provided optimistic updates about his progress in generating profits for Plaintiffs.  (*See* ECF No. 19, PageID #383–84 (citing ECF No. 1, ¶¶ 48–49, 87–88, & 98–99, PageID #11, 20–21, & 23).)  Therefore, Plaintiffs' claims under Section 77l(a)(2) fall within the one-year limitations period.

Defendant argues that Plaintiffs were not prevented from discovering "any [of the] alleged wrongdoing," all the alleged misrepresentations "occurred prior to their investments," and Defendant's alleged statements to quell Plaintiffs' skepticism "do not relate to their claims and would not prevent the discovery of any alleged wrongdoing" if they had exercised "due diligence."  (ECF No. 20, PageID #457–58.)  According to the facts alleged in the complaint, however, Plaintiffs only suspected fraud and started their investigation after Mr. Smith requested and was refused basic business operating documents in March 2020.  Therefore, Plaintiffs' Exchange Act claims are within the two-year limitations period.

27

But not all of Plaintiffs' stock purchases occurred within the three-year repose period.  As Plaintiffs acknowledge, Mr. Smith made his first investment on January 9, 2017; Mr. Garland made his first investment on December 13, 2016; Mr. Kamide made his first two investments on June 7 and June 30, 2017; Mr. Sustar made his investment on June 28, 2017; Mr. Thomas made investments on December 1 and December 28, 2016; and Bud Brothers invested in 2016 and 2017—all of which fall outside the three-year repose period.  (ECF No. 19, PageID #386.)  Accordingly, the Court **DISMISSES** those claims.

### III.A.2. Exchange Act Claims

Plaintiffs' claims under the Exchange Act (Count I) have similar limitations as those under the Securities Act, but the limitation period is two years, and the repose period is five years.  *See* 28 U.S.C. § 1658(b)(1)–(2). The Exchange Act's limitations period does not begin to run until "discovery of the facts constituting the violation." 28 U.S.C. § 1658(b)(1).  Therefore, the question on this motion to dismiss is when Plaintiffs discovered the facts constituting a violation under 15 U.S.C. § 78j.

As relevant here, a claim under Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), requires a plaintiff to discover the defendant's scienter.  *See Merck & Co. v. Reynolds*, 559 U.S. 633, 648 (2010) (citation omitted).  In *Merck*, the Supreme Court held that the limitations period begins to run when the plaintiff "discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation,' including scienter—irrespective of whether the actual plaintiff undertook a reasonably diligent investigation." *Id.* at 653.  In other words, the test is not whether Plaintiffs were reasonably diligent but whether there was information

available from which to discern scienter outside the limitations period.  Imposing a higher standard would "frustrate the very purpose of the discovery rule in this provision" because "if the limitations period began to run regardless of whether a plaintiff had discovered any facts suggesting scienter[,]" all a defendant would need to do is "conceal[] for two years that he made a misstatement with intent to deceive," and "the limitations period would expire before the plaintiff had actually discovered the fraud." *Id.* at 649 (cleaned up).

Defendant argues that, with reasonable diligence, Plaintiffs could have discovered his scheme *before* they invested and that a reasonable investor would have grown suspicious at that time.  But the Supreme Court rejected such a framing of the discovery rule in *Merck*.  Defendant points to no "storm warning" that should have tipped off Plaintiffs.  *See id.* at 653 (rejecting the inquiry-notice standard); *see also Akbar v. Bangash*, No. 15-cv-12688, 2017 WL 4334912, at *3–4 (E.D. Mich. July 11, 2017) (explaining this standard).  Indeed, a "fact is not deemed 'discovered' for limitations purposes until 'a reasonably diligent plaintiff would have sufficient information about the fact to adequately plead it in a complaint.'" *Akbar*, 2017 WL 4334912, at *4 (quoting *City of Pontiac Gen. Emps. Ret. Sys. v. MBIA, Inc.*, 637 F.3d 169, 175 (2d Cir. 2011)).

Based on the same allegations regarding the limitations period for claims under the Securities Act, Plaintiffs maintain that they did not know of Defendant's fraudulent scheme until March 13, 2020, at the earliest.  (ECF No. 1, ¶ 112, PageID #26; *see also* ECF No. 19, PageID #383–84 (citing ECF No. 1, ¶¶ 48–49, 87–88 &

98–99, PageID #11, 20–21 & 23).) In response, Defendant argues that Plaintiffs were not prevented from discovering "any alleged wrongdoing," that all the alleged misrepresentations "occurred prior to their investments," and Defendant's alleged statements to quell Plaintiffs' skepticism "do not relate to their claims and would not prevent the discovery of any alleged wrongdoing" if they had exercised "due diligence." (ECF No. 20, PageID #457–58.) Based only on the facts alleged in the complaint, Mr. Swaffer continued to assuage investors throughout 2019 and into early 2020. A storm warning occurred only when Mr. Smith requested and was refused basic business operating documents. As pleaded, before then, little if anything suggests that fraud might be afoot. Accordingly, Plaintiffs discovered or reasonably should have discovered the fraud of which they complain, at the earliest, when they requested access to POHIH's books and records. They filed suit within months, making their claims under the Exchange Act timely based on the discovery rule.

### III.A.3. State-Law Claims

Each of these State Blue-Sky statutes under which Plaintiffs bring claims (in Counts IV, V, and VI) also contain limitations periods, though they are more lenient than the time limits in the Securities Act, and all contain discovery rules similar to the one in the Exchange Act. *See NYE Cap. Appreciation Partners, L.L.C. v. Nemchik*, 483 F. App'x 1, 7–8 (6th Cir. 2012) (applying the discovery rule to the plaintiff's "state and federal securities claims"); Ohio Rev. Code § 1707.43(B) (two-year statute of limitation, five-year statute of repose); Cal. Corp. Code § 25507(a) (requiring lawsuits be brought no later than "two years after the violation" or within "one year after the

discovery of" the violation); Ind. Code § 23-19-5-9(g) (action must be brought within three years "after discovery"). Accordingly, these claims are not time-barred for the same reasons already explained.

Finally, the Court addresses whether Plaintiffs timely asserted their Michigan statutory conversion claim. (ECF No. 18-1, PageID #318.) "Under Michigan law, conversion claims are subject to a three-year statute of limitations." *Hunt v. Hadden*, 665 F. App'x 435, 437 (6th Cir. 2016) (citing *Tillman v. Great Lakes Truck Ctr., Inc.*, 742 N.W.2d 622, 623–24 (2007)). "If a defendant fraudulently conceals the conversion, however, the concealment tolls the statute of limitations, and the plaintiff may bring the conversion claim within two years of discovering that the claim exists." *Id.* (citing Mich. Comp. Laws § 600.5855). "Ordinarily, fraudulent concealment requires some affirmative act or representation by the defendant." *Id.* (citing *Dillard v. Schlussel*, 865 N.W.2d 648, 654–55 (2014)). A plaintiff must "show that the defendant engaged in some arrangement or contrivance of an affirmative character designed to prevent subsequent discovery." *Dillard*, 865 N.W.2d at 654 (citation and quotation omitted). "Mere silence does not demonstrate fraudulent concealment and, if liability were discoverable from the outset, then MCL 600.5855 will not toll the applicable period of limitations." *Id.* (cleaned up).

Defendant argues that several Plaintiffs—Smith, Garland, Kamide, Sustar, Thomas, and Bud Brothers—"each made investments . . . at various times prior to August 19, 2017," such that the three-year statute of limitations bars "each of their claims under Count VII." (ECF No. 18-1, PageID #318.) At this stage of the

31

proceedings, Plaintiffs allege that Mr. Swaffer reassured Plaintiffs that their investments would be profitable. These assurances and the conduct Plaintiffs allege goes beyond mere silence and tolls the limitations period. Therefore, Plaintiffs timely filed Count VII as well.

*    *    *

For the foregoing reasons, the Court determines that Plaintiffs' claims under the Securities Act relating to the first investment of Mr. Smith and Mr. Garland, the first two investments of Mr. Kamide, Mr. Sustar's investment, and the two investments of Mr. Thomas on December 1 and December 28, 2016 and of Bud Brothers in 2016 and 2017 are time barred.

### III.B. Failure to State a Claim

To withstand a motion to dismiss, Plaintiffs must allege facts that "state a claim to relief that is plausible on its face" and raise their "right to relief above the speculative level." *Cook v. Ohio Nat. Life Ins. Co.*, 961 F.3d 850, 855 (6th Cir. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

When analyzing a complaint under this standard, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015). But a complaint must offer more than "labels and

conclusions" because "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quotation omitted).  Rule 8, along with *Twombly* and *Iqbal*, require a plaintiff to "plead enough factual matter to raise a plausible inference of wrongdoing." *16630 Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 502, 504 (6th Cir. 2013) (cleaned up).  This inference "depends on a host of considerations, including common sense and the strength of competing explanations for the defendant's conduct." *Id.* (citations omitted).  To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555.

A heightened standard applies to Plaintiffs' claims for fraud and securities fraud under Rule 9(b), which requires a party to "state with particularity the circumstances constituting fraud[.]"  Fed. R. Civ. P. 9(b).  Generally, Rule 9(b) requires a plaintiff "(1) to specify the allegedly fraudulent statements; (2) identify the speaker; (3) to plead when and where the statements were made; and (4) to explain what made the statements fraudulent." *Republic Bank & Tr. Co. v. Bear Stearns & Co.*, 683 F.3d 239, 247 (6th Cir. 2012) (citation omitted).  But "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).

Additionally, under the Private Securities Litigation Reform Act of 1995, "the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  15 U.S.C. § 78u-4(b)(2)(A); *see also Tellabs, Inc. v.*

*Makor Issues & Rights, Ltd.*, 551 U.S. 308, 312 (2007); *Doshi v. General Cable Corp.*, 823 F.3d 1032, 1039 (6th Cir. 2016). The Reform Act also requires that "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B); *In re TransDigm Grp., Inc. Sec. Litig.*, 440 F. Supp. 3d 740, 760 (N.D. Ohio 2020).

Where a plaintiff fails to meet these standards, "the court shall, on the motion of any defendant, dismiss the complaint." 15 U.S.C. § 78u-4(b)(3)(A). In determining whether to dismiss, courts consider not only the complaint, but also "plausible opposing inferences" that favor the defendant. *Doshi*, 823 F.3d at 1039 (citation and quotation omitted). The Reform Act's requirements are intended to be an "elephant-sized boulder" in the way of private securities fraud cases. *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 461 (6th Cir. 2014). They also limit "fishing expeditions," help "protect[] defendants' reputations from allegations of fraud," and narrow "potentially wide-ranging discovery to relevant matters." *Republic Bank*, 683 F.3d at 248 (cleaned up).

Generally, Defendant argues that Plaintiffs fail to meet the heightened pleading standard for fraud and, where applicable, the Reform Act. (ECF No. 18-1, PageID #319.) In particular, Defendant maintains that (1) he had no individual duty to Plaintiffs to disclose any information; (2) Plaintiffs fail to identify misrepresentations or omissions and when or where Defendant made those

misrepresentations or omissions; and (3) the complaint fails to allege facts showing that Defendant had the requisite state of mind.  Defendant undertakes little effort to develop these arguments, so the Court gives each the consideration its due based on the treatment Defendant affords it.

### III.B.1. Individual Liability

First, Defendant argues in essence that Plaintiffs are suing him not POHIH or 5 Letters, which are the proper defendants.  In its entirety, his argument consists of the following: "Defendant is being sued in his individual capacity.  Defendant did not offer or sell any securities to any of the Plaintiffs.  Even if Defendant did not disclose the facts the Plaintiffs claim are material omissions, Defendant was under no duty to disclose that information as an individual." (*Id.*)  Beyond that, Defendant provides a citation to a specific page of the Sixth Circuit's ruling in *Republic Bank* with no explanation for why the citation supports his motion in any way—not even a parenthetical.  Upon examination of that citation, it is not apparent to the Court what Defendant attempts to argue or why he cites the case.  *Republic Bank* affirmed dismissal of common-law and Blue-Sky claims over fraudulent underwriting.  But the portion of the opinion to which Defendant cites simply references the general standard under Kentucky law for claims based on omissions and says that the plaintiff's claim there "offers so little information about the underwriting standards" that the allegations did not satisfy Rule 9(b).  *Republic Bank*, 683 F.3d at 255.  Whatever argument Defendant tries to make here finds no support in his bare citation, and Plaintiffs allege sufficient facts under the governing pleading standards to put Defendant on notice of their claims.

### III.B.2. Specificity of Alleged Fraud and Reliance

Defendant argues that Plaintiffs fail to allege with specificity when or where Mr. Swaffer made allegedly false statements and make conclusory allegations of reliance. (ECF No. 18-1, PageID #319–20.) Aside from this general argument, Defendant points specifically to three misrepresentations in particular. (*Id.*, PageID #319–20.) He argues that two of the alleged misstatements at issue are opinions of future performance. (*Id.*, PageID #320.) In doing so, he invites the Court to disregard Plaintiffs' allegations, which runs counter to the governing standard on a motion to dismiss. (*Id.*)

Contrary to Defendant's argument, Plaintiffs identify the approximate dates of their investments and the amounts of those investments, what Mr. Swaffer told them or omitted to tell them, and sufficient allegations of reliance. (*See, e.g.*, ECF No. 1, ¶¶ 60–68, PageID #319–21.) To the extent Defendant argues that various allegations in the complaint are factually inconsistent, Plaintiffs may plead in the alternative, Fed. R. Civ. P. 8(d)(2), regardless of consistency, Fed. R. Civ. P. 8(d)(3).

For his argument that the alleged misrepresentations at issue constitute nonactionable opinions, Defendant again relies on *Republic Bank*. But the citation references Kentucky law, not federal law. Under federal law, opinions that constitute soft information may still be actionable. *See In re Omnicare, Inc. Sec. Litig.*, 769 F.3d at 470. Whether the defendants made those statements with knowledge of their falsity is reserved for the scienter analysis. *Id.* at 471. Based on the totality of the complaint, Plaintiffs sufficiently allege that the three statements to which Defendant points are material and allegedly false or misleading.

Even assuming that Plaintiffs alleged misrepresentations do not satisfy the heightened pleading standard, Plaintiffs sufficiently plead that Defendant omitted material information regarding their investments.  Plaintiffs allege that before and after Defendant induced their investments, Defendant omitted material information that Plaintiffs' funds "would be commingled with the of the funds of other investors in one of more personal bank accounts" and used "for personal expenses" relating to dining, golf, and shopping.  (ECF No. 1, ¶ 46, PageID #9–11.)  It is "obvious that a reasonable investor would consider it important to know that his money would not be invested" in the company in which the security was offered, "but would instead be used for other purposes, such as to pay for" personal expenses.  *SEC v. Smith*, No. C2-CV-04-739, 2005 WL 2373849, at *5 (S.D. Ohio Sept. 27, 2005).  Had Mr. Swaffer disclosed the information Plaintiffs allege he omitted, the complaint makes clear that Plaintiffs would have altered their investment decisions.  Accordingly, the specificity of these omissions satisfies the heightening pleading standard and shows that Plaintiffs relied on Defendant's prior representations and omissions.

### III.B.3. Scienter and State of Mind

Finally, Defendant argues that Plaintiffs fail to plead scienter with the particularity required under the Reform Act and otherwise fail to allege the requisite state of mind for their remaining claims.  In total, he argues that "Plaintiffs provide no factual allegations supporting their conclusory statements that Defendant acted with the requisite mental states.  *See* 15 U.S.C. § 77u–4.  Specifically, Plaintiffs only make conclusory statements concerning Defendant's mental state such as Defendant 'knew these representations were false.'"  (ECF No. 18-1, PageID #322.)

To allege scienter under the Reform Act, a plaintiff must demonstrate that the defendant "had a mental state embracing intent to deceive, manipulate or defraud." *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d at 472.  "[T]he Supreme Court set forth a three-part test used by lower courts to determine the sufficiency of a plaintiff's scienter allegations."  *Dougherty v. Esperion Therapeutics, Inc.*, 905 F.3d 971, 979 (6th Cir. 2018) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).  This inquiry requires lower courts to:  (1) "accept all factual allegations in the complaint as true"; (2) "consider the complaint in its entirety" to determine "whether all of the facts alleged, taken collectively, give rise to a *strong inference of scienter*"; and then (3) "take into account plausible opposing inferences" to decide whether "a reasonable person would deem the inference of scienter *cogent and at least as compelling* as any opposing inference one could draw from the facts alleged." *Tellabs*, 551 U.S. at 322–24 (emphasis added).

Plaintiffs argue they meet the requirements of the Reform Act by "identifying the approximate dates of their investments, the amounts thereof," and "what Swaffer told them, or failed to tell them" about "commingling investor funds" and that he "would use their investment funds for personal expenses."  (ECF No. 19, PageID #388.)  In support, Plaintiffs point to allegations that each Plaintiff makes detailing the allegedly fraudulent acts and omissions of Mr. Swaffer:

> In addition to the foregoing oral and written material misstatements made by Swaffer to Smith prior to his initial investment described above, Swaffer omitted to inform Smith of the following material facts:
>
> > (1) that Smith's funds would be commingled with the funds of other investors in one or more personal bank accounts controlled

by Swaffer; (2) that Swaffer would use some of funds provided by investors for personal expenses of Swaffer and his wife, treating investors funds as a "slush fund" for Swaffer, and using investors' funds for non-business expenditures such as:

    i.    Wolfgang Puck (1/23/2017);
    ii.   Las Sendas Golf Club, Mesa, Arizona (4/10/2017);
    iii.  Tickets with Alaska Airlines (9/14/2017);
    iv.  Macys in Traverse City, Michigan (10/10/2017);
    v.   The Old Shillelag[h]
    vi.  Opas Butcher Shop in Cadillac, Michigan (11/28/2017);
    vii.  Delta Dental (12/11/2017);
    viii. Hand Surgery Northern Traverse City (12/12/2017).

(3) that there were material risks and impediments to the success of the cannabis business that created substantial risk that the business would not succeed, or at a minimum not be as successful as Swaffer represented;

(4) that Swaffer did not have the skills and expertise to operate successfully the cannabis business described to Smith by Swaffer;

(5) that there were complications in Texas that created a substantial likelihood that a license to do business in that state would not be granted and that therefore the expenditure of substantial funds in connection with seeking such a license could be wasted and inimical to the company's business;

(6) that Swaffer was having internal staffing and other disputes (that ultimately caused him to transfer the business from 5 Letter to POHIH, Inc.);

(7) that Swaffer had no reasonable basis to believe that the business could generate over one billion dollars in revenue, in one year or at any time;

(8) that Swaffer had no realistic assumptions to form the basis for his representations for the prospects of the business and that his promises were nothing more than sheer speculation, designed to induce Smith and others to invest;

(9) that Swaffer had no realistic estimate of the costs to be incurred in entering the cannabis business described to Smith, nor of the amount of funds needed to be raised;

(10) that the price per share established by Swaffer for Smith's shares of POHIH, Inc. and the percentage of ownership that said shares represented was determined by Swaffer arbitrarily, and without regard to any objective or even describable criteria or method of evaluation;

(11) that investors' funds could and would be used to pay credit card bills for Swaffer's wife and to pay for Swaffer's personal boats and vehicles, and Swaffer would employ members of Swaffer's family at inflated salaries while they performed very little work.

(12) that a portion of investors' funds could and would be diverted and used to fund organizations that POHIH, Inc. did not own or control, such that some of the funds invested by Smith would be used by Swaffer to fund entities in which Smith had no ownership and could receive no financial benefit. Specifically, without informing Smith that Swaffer had the power and discretion to do so, Swaffer used investment funds provided by Smith and the other Plaintiffs in the action to invest in a cannabis operation in Greece through a company called Penta, LLC. Penta, LLC, on information and belief, is a distinct and separate company from POHIH Inc. Upon information and belief, Swaffer used at least $600,000 of the funds provided by Smith and other Plaintiffs herein to invest in this Greek operation.

(ECF No. 1, ¶ 46, PageID #9–11.)  Additionally, the complaint makes several allegations specific to particular Plaintiffs.  (*See id.*, ¶¶ 38–45, PageID #8–9 (Mr. Smith); *id.*, ¶ 72, PageID #18 (Mr. Sustar)).

Disregarding Plaintiffs' conclusory allegations and those that impermissibly fail to set out specific misstatements for each Plaintiff, the complaint still meets the high standard the Reform Act sets for pleading scienter.  Considering the complaint in its entirety, the facts alleged give rise to various competing inferences.  For example, the losses Plaintiffs complain of might result from events in a risky venture beyond anyone's control.  Or they might be the direct result of deliberate and

40

intentional fraud.  Plaintiffs allege, among other things, that Mr. Swaffer commingled funds, hired relatives at inflated salaries, used corporate funds for personal expenses, and misrepresented the regulatory approvals for doing business in Texas that materially affected the profitability of Plaintiffs' investments.  On the facts alleged, the complaint as a whole gives rise to an inference of scienter on the part of Mr. Swaffer at least as cogent and compelling as any inferences that point against scienter and, ultimately, liability.

To aid in determining whether there is a strong inference of scienter, the Sixth Circuit looks to "nine non-exhaustive factors."  *Doshi v. General Cable Corp.*, 823 F.3d 1032, 1039–40 (6th Cir. 2016).  Although Defendant includes no argument regarding the specific factors, the Court has considered them in analyzing whether the complaint gives rise to an inference of scienter that meets the demands of the Reform Act and the jurisprudence interpreting and applying it.  Because the allegations of the complaint meet this stringent standard, the Court concludes *a fortiori* that it also satisfies the pleading requirements relating to the requisite state of mind for Plaintiffs' other claims.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's motion to dismiss for lack of personal jurisdiction and his motion to dismiss for improper venue or to transfer the case and **GRANTS IN PART AND DENIES IN PART** Defendant's motion to dismiss for failure to state a claim.  (ECF No. 18.)  Specifically, the Court dismisses Plaintiffs' claims under the Securities Act to the extent they relate to the first investment of Mr. Smith and Mr. Garland, the first two investments of

Mr. Kamide, Mr. Sustar's investment, and the two investments of Mr. Thomas on December 1 and December 28, 2016 and of Bud Brothers in 2016 and 2017 because they are time-barred.

**SO ORDERED.**

Dated:  October 7, 2021

_____
J. Philip Calabrese
United States District Judge
Northern District of Ohio